UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUI ZHANG,

          Plaintiff,

    v.

NING MENG,

          Defendant.

Case No.  25-cv-08751-SVK

**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**

**REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 16

Plaintiff Hui Zhang brings this action against Defendant Ning Meng for breach of contract and fraud related thereto.  *See* Dkt. 1 ("Complaint").  The Clerk of the Court issued a summons on October 15, 2025.  Dkt. 5.  After Defendant failed to appear or respond to the Complaint and Summons, Plaintiff requested Entry of Default on November 11, 2025 and again on December 12, 2025 after correcting certain errors with summons and the proof of service.  *See* Dkts. 9-14.  The Clerk of Court entered default against Defendant on December 12, 2025.  Dkt. 15.  Before the Court is Plaintiff's Motion for Default Judgment.  Dkt. 16 ("Motion").  The Court determines that the Motion is suitable for resolution without oral argument.  Civil L.R. 7-1(b).

To date, Defendant has neither appeared in this action nor opposed the Motion.  Thus, although Plaintiff has consented to the jurisdiction of a magistrate judge, (Dkt. 3), Defendant has not.  Therefore, the Court now directs the Clerk of the Court to **REASSIGN** this case to a District Judge, with the **RECOMMENDATION** that the Plaintiff's motion for default judgement be **GRANTED IN PART** and **DENIED IN PART without prejudice** as recommended below.

////

////

////

## I.    BACKGROUND

Plaintiff and Defendant are real estate professionals residing in San Jose, California and Austin, Texas, respectively.  Dkt. 1, ¶ 3.[1]  The Parties first "met each other at a meet-up event for potential real estate investors," and from 2017-2020, were engaged in a real estate investment enterprise in the Sacramento area (along with two other mutual friends).  *Id.*, ¶¶ 9-10.  That enterprise "was uneventful" and resulted in $1.6 million in sales proceeds in 2020.  *Id.*, ¶ 11.  Thereafter, in 2021, Defendant moved to Austin, Texas.  *Id.*, ¶ 12.  The Parties continued to conduct business together, as Defendant suggested, and Plaintiff (along with the same two friends) agreed, "to use the sales proceeds from the Sacramento investment property to buy another investment property in the Austin, TX area."  *Id.*, ¶ 13.

In 2024, Defendant asked to borrow money from Plaintiff and their mutual friends "for various reasons."  *Id.*, ¶ 14.  First, Defendant claimed "she was going through a painful divorce [and] needed money to buy her current rental house."  *Id.*, ¶ 15.  When that explanation failed, she "claimed that she had made various friends in the cryptocurrency industry and that she could easily make millions of dollars" back.  *Id.*, ¶ 16-17.  Defendant elaborated on that offer to Plaintiff, saying that she "would make an instant risk-free profit and pay Plaintiff Zhang back the principal, with a 5% to 10% monthly interest, in a matter of one to two weeks."  *Id.*, ¶ 17.  Plaintiff did not agree.  *Id.*  Defendant made at least two more entreaties to Plaintiff along similar lines in 2024 and 2025.  *Id.*, ¶¶ 18-20.

Finally, in late July, 2025, Defendant contacted Plaintiff and told him that "one of her cryptocurrency tycoon friends urgently needed $1 million to pay a total $2 million 'crypto tax' imposed by the IRS, and that once the 'crypto tax' is paid, the IRS would release the entire $40 million cryptocurrency portfolio owned by this friend" so that Plaintiff would be paid back "in a matter of days."  *Id.*, ¶¶ 21-23.  Finally, with Defendant's agreement to pay interest at a 10%

////

---

[1] The background facts are drawn from the Complaint, the allegations of which (except for damages) the Court takes as true for the purposes of evaluating a motion for default judgment.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

United States District Court
Northern District of California

annual rate and to put up certain collateral,[2] Plaintiff relented and the Parties agreed. *Id.*, ¶ 23-24. The terms were memorialized in a written agreement alleged in full in the Complaint, providing for repayment no later than August 15, 2025. *Id.*, ¶ 24. Plaintiff wired Defendant $1 million on July 29, 2025. *Id.*, ¶ 25.

The next day, Defendant called Plaintiff and claimed her bank account had been frozen. *Id.*, ¶ 26. Plaintiff alleges this to be false, as Defendant had on the same day told their mutual friend that she had "just obtained funds to pay off her debt to" him. *Id.*, ¶ 27. Plaintiff began trying to get his money back, going so far as to "offer[] to visit Defendant Meng in Austin, TX, so that they could together go to clear things up at a local branch of Bank of America." *Id.*, ¶ 31. Defendant agreed but then reneged, claiming her mother "had just suffered a life-threatening car accident in China" and saying that she would be returning to China immediately and staying there indefinitely. *Id.*, ¶ 33. Plaintiff has learned that Defendant Meng also borrowed money from both of their mutual friends and "never paid them back anything." *Id.* Plaintiff also alleges that Defendant is in the process of, if she has not already done so, transferring the Orinda Property that was collateral for the loan to a straw person to make herself appear judgment-proof. *Id.*, ¶¶ 35-36.

Plaintiff brings this action to recover for breach of contract, fraudulent misrepresentation in inducing the contract and fraudulent transfer (or intent to fraudulently transfer) the Orinda Property in violation of California Civil Code §§ 3439.04-05 and the common law. *Id.* at 10-17.

Plaintiff's Complaint seeks damages, as well as an "Order nullifying and voiding the transfer of Defendant Meng's interest in the Orinda Property" such that it could be "included in a judgment against Defendant Meng." However, Plaintiff's Motion for Default Judgment seeks only damages in the amount of $1,051,488.77, accounting for $1,004,657.53 due under the loan agreement, $46,196.24 in prejudgment interest and $635.00 as the costs of suit. *Compare id.* at 17 *with* Dkt. 16 at 2.

////

////

---

[2] One real property located at 4 El Sereno, Orinda CA 94563 (the "Orinda Property"); the funds in her BitBay account and her shares in a company called Westlake Securities. Dkt. 1, ¶ 23.

## II.    LEGAL STANDARD

When a party seeks default judgement against another "who has failed to plead or otherwise defend [an action], a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Before entering default judgment, the Court must also assess the adequacy of the service of process on the party against whom default is requested. *See Trustees of ILWU-PMA Pension Plan v. Coates*, No. 11-cv-03998-EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013).  After reviewing jurisdiction and service of process, the Court may in its discretion enter a default judgement after entry of default.  Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In evaluating a motion for default judgment, "the court takes the factual allegations in the complaint as true, except those relating to the amount of damages." *BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 981 (D. Nev. 2024) (citing *TeleVideo Sys.*, 826 F.2d at 917-18).  To determine whether default judgment is appropriate, courts consider seven factors set forth by the Ninth Circuit:  (1) the possibility of prejudice to the plaintiff;  (2) the merits of plaintiff's substantive claims;  (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;  (5) the possibility of dispute concerning material facts;  (6) whether default was due to excusable neglect;  and (7) the strong policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.    DISCUSSION

### A.    The Court Has Subject Matter and Personal Jurisdiction

First, the Court has subject matter jurisdiction by way of diversity under 28 U.S.C. § 1332. Specifically, Plaintiff is a citizen of California, Defendant is a citizen of Texas and the amount in controversy is approximately $1 million, exceeding the $75,000 threshold.  *See* Dkt. 1, ¶¶ 3, 6.

The Court also finds that it has specific jurisdiction over Defendant.  "California's long-arm jurisdictional statute is coextensive with federal due process requirements, [such that] the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

> For due process to be satisfied … (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The first prong of the analysis breaks down further into "purposeful availment" and "purposeful direction," "with availment being the standard for suits based in contract and direction the standard for suits based in tort." *Wells Fargo Bank, Nat. Ass'n v. Brickman*, No. 11-cv-1758-PHX (JAT), 2012 WL 1029529, at *3 (D. Ariz. Mar. 27, 2012) (citing *Schwarzenegger*, 374 F.3d at 802). Under either test, and thus for Plaintiff's contract claims and his fraud-based claims, the minimum contacts analysis is satisfied. Under the former, "it is sufficient for due process that 'the suit [is] based on a contract which had substantial connection with [the forum state],'" (*id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The contract at issue here has a party-resident in California coupled with collateral property located in California, (Dkt. 1, ¶¶ 3, 24). Under the "direction" standard, Defendant is alleged to have directed her fraud at Plaintiff knowing that Plaintiff resided and lived in California and that his financial harm would be felt here. Dkt. 1, ¶¶ 13-22; *see Pebble Beach*, 453 F.3d at 1156 (describing the "*Calder* effects test" from *Calder v. Jones*, 465 U.S. 783 (1984)). Thus, the Court has personal jurisdiction over Defendant.

### B.    Defendant was Properly Served with Process

The Federal Rules of Civil Procedure permit for service of the summons and complaint upon an individual by, *inter alia*, "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Plaintiff's process server avers that, on November 20, 2025, he served the summons and complaint upon defendant, who "answered [the] front door, identified herself and took the papers." Dkt. 13. Accordingly, service is adequate under the federal rules.

////

////

////

5

United States District Court
Northern District of California

### C.    The *Eitel* Factors Support Entry of Default Judgment

Having concluded that the requirements of jurisdiction and service of process are met, the Court next considers the *Eitel* factors. Upon consideration, the factors as a whole weigh in favor of entry of default judgment against Defendant as to Count I (breach of contract) but not as to Plaintiff's remaining claims. For this review, the court takes a Complaints' well-plead factual allegations as true, "except those relating to the amount of damages." *BBK Tobacco & Foods*, 723 F. Supp. 3d at 981 (citing *TeleVideo Sys.*, 826 F.2d at 917-18).

#### 1.    *Eitel* Factor 1:    Prejudice to the Plaintiff

As courts in this Circuit regularly find, "[o]n a motion for default judgment, prejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014); *see also, e.g.*, *Prussin v. Bekins Van Lines, LLC*, No. 13-cv-02874-HRL, 2017 WL 1092332, at *2 (N.D. Cal. Mar. 23, 2017). That is the case here, where Defendant has failed to respond to this action such that default judgment is Plaintiff's sole recourse. Because Plaintiff would be left with no remedy against Defendant absent default judgment, the first *Eitel* factor weighs in favor of default judgment.

#### 2.    *Eitel* Factors 2 and 3:    The Merits of Plaintiff's Claims and the Sufficiency of the Complaint

Plaintiff next argues that his Complaint sufficiently states a claim for breach of contract (Count I) and provides evidence supporting the merits of the claim. Dkt. 16 at 7-8; Dkt. 16-1 at 5 (email from Defendant on November 7, 2025). Taking the non-damages allegations of the Complaint as true, (*see TeleVideo Sys.*, 826 F.2d at 917-18)), the Court agrees that they are sufficient to state a claim for breach of contract. The breach of contract claim also appears meritorious. The "I Owe You Agreement" is attached to the Complaint as exhibit A thereto and appears to bear Defendant's electronic signature. *See* Dkt. 1 at 20. Moreover, in an email to Plaintiff's attorney on November 7, 2025, Defendant stated that she "take[s] full responsibility for the loan and its interest." Dkt. 16-1. Accordingly, the second and third *Eitel* factors weigh in favor of default judgment as to Count I.

As to the related fraud-based claims, (Counts II-V), Plaintiff does not argue that the second

or third *Eitel* factors support default judgment. *See* Dkt. 16 at 7-8. "It is incumbent upon plaintiff to state, apply, and support the factors on the claim(s) upon which it seeks default judgment." *E.g.*, *Design Collection, Inc. v. Body Shop of Am, Inc.*, No. 13-cv-9000-FMO (SHX), 2014 WL 12616611, at *1 (C.D. Cal. Mar. 19, 2014); *Sherman v. Carl Hornung LLC*, No. 24-cv-02391-MDC, 2025 WL 1898033, at *1 (D. Nev. June 3, 2025) ("The party seeking default judgment has the burden to demonstrate default judgment is warranted."). Indeed, it is not clear whether Plaintiff seeks default judgment as to Counts II-V. *See, generally*, Dkt. 16. Regardless, on the record before the Court, Plaintiff has failed to show that the second and third *Eitel* factors support default judgment as to his fraud-based claims.

### 3. *Eitel* Factor 4: The Sum of Money at Stake in the Action

The sum of money at stake is substantial (over $1,000,000), as is the amount of money loaned by Plaintiff to Defendant. Dkt. 1, ¶ 23 and p. 20. "So, yes the sum is substantial, but it is warranted by the evidence." *Prussin v. Bekins Van Lines, LLC*, No. 5:13-CV-02874-HRL, 2017 WL 1092332, at *2 (N.D. Cal. Mar. 23, 2017). Accordingly, this factor weighs in favor of default judgment. *Id.* (sum of $500,000 favored default judgment where supported by the claim).

### 4. *Eitel* Factors 5: The Possibility of Disputed Facts

The weight of the fifth *Eitel* factor varies depending on the claim. As to the breach of contract claim, there does not appear to be a serious possibility of disputed facts as Defendant "take[s] full responsibility for the loan and its interest." Dkt. 16-1 at 5. However, with regard to the fraud-based claims, Defendant in her email maintains that "there was not any moment [where she] was intentionally planning fraud on [Plaintiff]." *Id.* Moreover, as with the second and third factors, all of Plaintiff's arguments under the fifth factor are directed to the breach of contract claim. Dkt. 16 at 9. Accordingly, this factor weighs in favor of default judgment on Count I but against default judgment on Counts II-V.

////

////

////

////

7

**5.      *Eitel* Factor 6: Whether Default Was Due to Excusable Neglect**

As indicated above, the Complaint and Summons adequately provided Defendant with notice of this action. *Supra*, § III.B.  Moreover, as Defendant's email shows, she received notice of the lawsuit and attempted to settle the lawsuit. Dkt. 16-1 at 5.  She even appears to have prepared a motion for change of venue, although the motion was never filed.  *Id.*  Accordingly, there is no indication that Defendant's failure to appear or answer was caused by excusable neglect.  This factor weighs in favor of default judgment.

**6.      *Eitel* Factor 7: The Policy Favoring Decisions on the Merits**

Finally, the seventh *Eitel* factor's preference for deciding cases on the merits weighs against default judgment, as Plaintiff concedes.  Dkt. 16 at 10 (noting that "this factor arguably always weighs against default judgment.").  However, the Court notes that this factor, "standing alone, is not dispositive." *E.g.*, *Adobe Sys. Inc. v. Kern*, No. 09-cv-1076 CW-JL, 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009).

\* \* \*

In sum, the weighing the *Eitel* factors, the Court finds that they weigh **in favor** of default judgment as to Count I (breach of contract) but **against** default judgment as to Counts II-V (the fraud-based claims).  Accordingly, the Court **RECOMMENDS GRANTING IN PART** and **DENYING IN PART** Plaintiff's Motion.

**D.      Plaintiff is Entitled to the Damages Sought**

As to the relief to be awarded, however, for the following reasons, the Court **RECOMMENDS GRANTING AS MODIFIED** the damages set forth in Plaintiff's Motion.

When a defendant fails to defend an action, the Federal Rules of Civil Procedure limit recovery of damages to the amount pleaded on the face of the complaint. *See, e.g.*, *U.A. Loc. 393 Health & Welfare Tr. Fund v. Cool Tech Mech., Inc.*, No. 24-cv-02762-SVK, 2025 WL 2094012, at *4 (N.D. Cal. June 3, 2025), *report and recommendation adopted,* 2025 WL 2094001 (N.D. Cal. July 17, 2025).  Moreover, the Court does not take the allegations of damages as true but evaluates the proof submitted by Plaintiff. *See BBK Tobacco & Foods*, 723 F. Supp. 3d at 987 (D. Nev. 2024).  Here, although the Complaint seeks various damages and equitable relief, Plaintiff's

Motion is more narrow, seeking:  $1,004,657.53 as due under the loan agreement, $46,196.24 in prejudgment interest and $635.00 as the costs of suit.  *Compare* Dkt. 1 at 17 *with* Dkt. 16 at 2.  The Court thus does not address the other forms of relief sought in the Complaint.

### 1.    Principal and Interest Through August 15, 2025

The evidence submitted by Plaintiff supports the that $1,004,657.53 was due under the loan agreement as of August 15, 2025.  The agreement, attached to the Complaint at ECF page 20, shows that (a) $1,000,000 was loaned (b) on July 29, 2025 (c) at a rate of 10% annual interest due August 15, 2025.  Dkt. 20.  As Plaintiff declares in support of his Motion and as shown in exhibit A thereto, Defendant concedes liability for the principal and interest under the loan.  Dkt. 16-1 at 2, 5.  The amount of interest accrued from July 29 to August 15 (*i.e.*, 17 days) is 0.465753424% (*i.e.*, 17 / 365 x 10%).  Thus, the principal of $1,000,000 and the interest of 4,657.53 sought by Plaintiff are both appropriate.

### 2.    Prejudgment Interest and Additional Compensatory Damages

Prejudgment interest is also appropriate, although not in the amount Plaintiff requests.  "Pre-judgment interest in a diversity action is ... a substantive matter governed by state law."  *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011).  The Complaint requests "prejudgment interest at the statutory rate from the time payments came due."  Dkt. 1 at 17.  Plaintiff argues that, pursuant to the California state constitution, he is entitled to prejudgment interest at a rate of 10% per annum.  Dkt. 16 at 10 (citing California Constitution, Article XV, Section 1).  Plaintiff thus calculates an amount of $46,196.2 from the date the claim accrued (August 15, 2025) to the date of the Motion (February 17, 2026).

However, Plaintiff's argument—although reaching the correct percentage—relies on the wrong law.  The California constitution, or at least that section thereof, addresses interest "upon a judgment," not prejudgment, and sets that rate to be "not more than 10 percent per annum."  Cal. Const. Art. XV, § 1.  Prejudgment interest is provided for breach of contract claims in California Civil Code § 3287(b):

> Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to

United States District Court
Northern District of California

the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal. Civ. Code § 3287(b).  Section 3287(b), however, does not set forth the rate.  Rather, California Civil Code § 3289(a) provides that:  "Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict…."  Cal. Civ. Code § 3289(a).  There is a tension here between Sections 3287(b) and 3289(a), as the former provides for prejudgment interest "in no event earlier than the date the action was filed," while the latter provides for continuing accrual of interest "after a breach."  *Compare* Cal Civ. Code § 3287(b) *with* § 3289(a).  Thus, it appears that the additional interest provided for in Section 3289 is not the pre-judgment interest but rather a continuation of compensatory damages in the form of continuing interest.  *See id.*  Nonetheless, courts in this District have applied the rate set forth in Section 3289(a) to the prejudgment interest as well, because no other rate appears on the face of the statute.  *See, e.g.*, *Beijing Huanqiu Zhonglian Inv. Consulting Co. v. Bar Works Cap., LLC*, No. 20-cv-01903-KAW, 2021 WL 6205827, at \*5 (N.D. Cal. Dec. 13, 2021), *report and recommendation adopted,* 2022 WL 19765 (N.D. Cal. Jan. 3, 2022) (applying Section 3289 to set the prejudgment interest rate).

Accordingly, Plaintiff's "prejudgment interest" request must be adjusted.  The contract at issue carries an interest rate of 10% per annum and, pursuant to Section 3289, that same interest rate remains chargeable.  The Court then breaks down the period of interest requested by Plaintiff into two segments:  First, interest accrued from the date of breach through the date of the filing of this action (August 15, 2025 – October 12, 2025);  second, prejudgment interest from the date of filing through entry of judgment (October 13, 2025 – date of judgment, to be determined.

Thus, Plaintiff is entitled to an additional $15,616.43 (calculated as:  58 days / 365 days per year x 0.1 x $1,000,000) in interest upon his $1,000,000 principal, bringing his total compensatory damages through October 12, 2025 to $1,020,273.97.  Thereafter, from October 13, 2025, Plaintiff is entitled to $60,936.91 as of the date of this order (calculated as:  218 days since October 13 / 365 days per year x 0.1 (*i.e.*, 10%) x $1,020,273.97).  The undersigned **recommends** that the Court update this number as of the date of judgment.

### 3.      Prejudgment Interest and Additional Compensatory Damages

Finally, as the prevailing party, Plaintiff may recover costs of suit.  *See* Fed. R. Civ. P. 54(d).  Pursuant to his declaration, Plaintiff's costs amount to $635.00: "the filing fee is $405.00, and cost for service of process is $230.00."  Dkt. 16 at 11 (citing Dkt. 16-1, ¶ 10).

## IV.      CONCLUSION

For the foregoing reasons, the Court **ORDERS REASSIGNMENT** of this case to a District Judge and **RECOMMENDS** that a **default judgment be entered in favor of Plaintiff and against Defendant as to Count I**.

The Court further **RECOMMEDS that Counts II-V be dismissed without prejudice**, as Plaintiff has not pursued (or has not adequately supported) default judgment on those claims.

Finally, the Court **RECOMMENDS** that Plaintiff be awarded damages in the amounts of $1,020,273.97 (principal + interest pursuant to the agreement), prejudgment interest at a rate of 10% per annum from October 13, 2025 through the date of judgment in a final amount to be determined and $635.00 in costs.

Any party may file objections to this report and recommendation within 14 days after being served with a copy.  *See* 28 U.S.C § 6369(b)(1);  Fed. R. Civ. P. 72(b);  Civ. L.R. 72-3.  Failure to file an objection may waive the right to review of the issue in the District Court.


**SO ORDERED.**

Dated: May 19, 2026

SUSAN VAN KEULEN
United States Magistrate Judge